# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BRUCE WOOD,                          )
                                     )
            Petitioner,              )
        v.                           )        Civil Action No. 11-1115-GMS
                                     )
DAVID PIERCE, Warden, and            )
ATTORNEY GENERAL OF THE              )
STATE OF DELAWARE,                   )
                                     )
            Respondents.[1]          )

---

Bruce Wood. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

## MEMORANDUM OPINION

Jan 22 , 2015
Wilmington, Delaware

---

[1]Warden David Pierce replaced former Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is an application for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 ("petition") filed by petitioner Bruce Wood ("Wood"). (D.I. 1) The State has

filed an answer in opposition. (D.I. 14) For the following reasons, the court will deny the

petition as time-barred by the one-year limitations period prescribed in 28 U.S.C. § 2244 and,

alternatively, as procedurally barred and meritless.

## I.    BACKGROUND

As summarized below by the Delaware Supreme Court, the facts leading to Wood's

arrest and conviction arose from two series of sexual abuse incidents involving two different

children.

> The first child, CG, lived with her family on the third floor of the Linden Green
> apartments in Pike Creek, Delaware, from January 1994 until July 2001. Wood lived in
> the same apartment building on the second floor with his girlfriend and child. In 1996,
> when CG was about six years old, Wood began sexually abusing her. CG and her
> siblings would spend time at Wood's apartment and play games with his son. The
> children would also play hide and seek with Wood. Wood would have the children hide
> and then he would take CG into his bedroom and lock the door. On one occasion, Wood
> blindfolded CG and fed her ice cream until he put something other than ice cream in her
> mouth. CG testified that she could see Wood's genitals through the bottom of the blindfold,
> but did not understand until later that his penis was in her mouth. CG also
> testified that Wood showed her pornographic materials, but would not always blindfold
> her when she performed oral sex on him. She testified that the abuse continued over a
> course of three years when she was between the ages of six and nine, and that it occurred
> more than fifty times.
>
> After Wood's girlfriend moved out in 1997, CG's stepfather discovered Wood
> and CG in Wood's bedroom with the door locked, but both Wood and CG denied that
> anything had happened. CG's parents never allowed the children to be alone with Wood
> after that. Later, Wood also moved out of that apartment complex. It was not until [the]
> fall [of] 2005, however, that CG told her mother that Wood had "messed with [her]"
> sexually, and they contacted the police.
>
> The second complaining witness, SP, was [Wood's] stepdaughter. In 1997, Wood
> met SP's mother and moved in with them four months later. SP testified that, in 2000,
> when she was ten years old, Wood began to sexually abuse her on a daily basis. While

1

wrestling, SP slipped and accidentally kicked Wood in the groin. Wood complained of pain for several days and then came home with an envelope that he said was from a doctor. SP testified that Wood told her that because she hurt him, she was going to have to fix him. Inside the envelope was piece of paper that described a sexual "procedure," including oral, vaginal, and eventually, anal sex, that she was to keep secret from her mother. SP testified that Wood sometimes videotaped and blindfolded her, and progressively integrated a crack smoking ritual into the abuse. He also showed her pornographic videos, including ones depicting her. SP testified that she and Wood engaged in sexual activities over a five-year period from 2000 to 2005, which occurred anywhere from 500 to over 2000 times.

In [the] fall [of] 2004, SP told a boyfriend that her stepfather was sexually abusing her. In October 2005, she told a counselor that Wood had been raping her for five years. When her mother found out and confronted Wood about the allegation, Wood said that SP was lying and that "if anybody raped anybody, she raped me." Wood, when contacted by police, denied the allegations and fled to Florida.

*Wood v. State*, 956 A.2d 1228 (Del. 2008).

In February 2006, Wood was arrested and subsequently charged by indictment with eighteen counts of first degree rape (eight counts with a victim under twelve years of age and ten counts by a person in a position of trust), and two counts of continuous sexual abuse of a child; the indictment listed two separate victims. *Id.* at 1229. Prior to trial, the trial court denied Wood's motion to sever the charges as to the two different victims. *Id.* at 1230. In February 2007, a Delaware Superior Court jury convicted Wood on all counts of the indictment except two counts of first degree rape (person in position of trust), on which the jurors were hung. *Id.* On September 7, 2007, the Superior Court sentenced Wood to a total of 290 years at Level V incarceration. The Delaware Supreme Court affirmed his convictions and sentence on September 8, 2008. *Id.* at 1233.

Wood filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on April 9, 2009. *See State v. Wood*, 2009 WL 3308806 (Del. Super. Ct. Aug. 24, 2009). The Superior Court denied the Rule 61 motion on

August 1, 2009, and Wood appealed. *See Wood v. State*, 9 A.3d 477 (Table), 2010 WL 4735003 (Del. Nov. 22, 2010). The Delaware Supreme Court affirmed the Superior Court's judgment on November 22, 2010. *Id.* at *2.

On March 16, 2011, Wood filed a second Rule 61 motion, which the Superior Court denied as time-barred on April 11, 2011. (D.I. 14 at 2) The Delaware Supreme Court affirmed that decision on September 21, 2011, and denied Wood's motion for rehearing *en banc* on October 11, 2011. *See Wood v. State*, 29 A.3d 247 (Table), 2011 WL 4396996, at *2 (Del. Oct. 11, 2011).

On May 12, 2011, Wood filed a federal habeas petition. (D.I. 1 *Wood v. Phelps*, Civ. A. No. 11-413-BMS) However, the Honorable Berle M. Schiller dismissed the petition without prejudice for failure to exhaust state remedies on July 6, 2011, because the petition explicitly stated that his appeal from his second Rule 61 motion was still pending. (D.I. 3 in *Wood v. Phelps*, Civ. A. No. 11-413-BMS)

Wood filed the instant habeas petition in November 2011, alleging the following four grounds for relief:[2] (1) the trial court erred by allowing the improper joinder of the two sets of charges naming different victims and by failing to grant Wood's motion to sever those charges; (2) defense counsel provided ineffective assistance by (a) failing to investigate Wood's pre-trial use of medication and failing to argue that Wood was incompetent to stand trial, (b) waiting until the day of trial to view the video statement of a witness that was improperly admitted pursuant to Del. Code Ann. tit. 11, § 3507, and (c) failing to request a hearing pursuant to Del. Code Ann.

---

[2]The court has renumbered Wood's claims without changing the substance alleged therein.

3

§ 3508 to determine the relevancy of the sexual conduct of the complaining witnesses;[3] (3)
defense counsel provided ineffective assistance by (a) failing to conduct an adequate pre-trial
investigation of the ten potential witness names provided by Wood, and failing to call those
witnesses at trial, (b) failing to adequately develop mitigating evidence for sentencing, and (c)
failing to timely file a supplemental brief as directed by the trial court; and (4) Wood's due
process rights were violated due to prosecutorial misconduct during the opening and closing
statements at trial. (D.I. 1) The State filed an answer in opposition, alleging that the petition
should be denied as time-barred or, alternatively, that the court should deny claim one for not
asserting a claim cognizable on federal habeas review; claim three (a) as meritless; and claim
two (a) - (c), claim three (b), (c), and claim four as procedurally barred. (D.I. 14)

## II.     ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into
law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date
must comply with the AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320,
336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions
by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or
> the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in
> violation of the Constitution or laws of the United States is removed, if the applicant was
> prevented from filing by such State action;

---

[3]Contrary to the State's assertion, Wood's instant petition does not contend that defense counsel
was ineffective for failing to raise an objection pursuant to Del. Code Ann. tit. 11, § 3513.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Wood's petition, filed in 2011, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh*, 521 U.S. at 336. Wood does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Thus, the one-year period of limitations in this case began to run when Wood's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Wood's conviction and sentence on September 10, 2008. Following that decision, Wood did not file a petition for a writ of certiorari in the United States Supreme Court. Consequently, Wood's conviction became final for the purposes of § 2244(d)(1) on December 9, 2008. Accordingly, to comply with the one-year limitations period, White had to file his § 2254 petition by December 9, 2009. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005)(holding that former Federal Rule of Civil Procedure 6(a), (e) applies to federal habeas petitions).

Wood did not file the instant habeas petition until November 2, 2011,[4] approximately one year and eleven months after the expiration of AEDPA's statute of limitations. Thus, the petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling). The court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). A prisoner's state post-conviction relief application that is rejected by a state court for being untimely is not "properly filed" for statutory tolling purposes. *See Allen v. Siebert*, 552 U.S. 3, 7 (2007).

In this case, when Wood filed his first Rule 61 motion on April 9, 2009, 120 days of the limitations period had already expired. The Superior Court denied the motion, and the Delaware Supreme Court affirmed the Superior Court's judgment on November 22, 2010.[5] Thus, the first Rule 61 motion tolled the limitations period from April 9, 2009 through November 22, 2010.

---

[4]Pursuant to the prisoner mailbox rule, the court adopts the date on which petitioner states he placed the petition in the mail, November 2, 2011, as the filing date. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003).

[5]Wood's petition for writ of certiorari regarding the denial of his first Rule 61 motion, which the United States Supreme Court denied on February 22, 2011, does not have any statutory tolling effect. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007)(AEDPA's one-year statute of limitations is not tolled during the pendency of a petition for certiorari to the United States Supreme Court seeking review of the denial of state post-conviction relief.; *Pabon v. Mahanoy*, 654 F.3d 385, 398 n.18 (3d Cir. 2011).

When the limitations clock started to run again on November 23, 2010, Wood had 245 days to timely file a federal habeas petition.

Wood filed a second Rule 61 motion March 16, 2011. The Superior Court denied the motion as time-barred in April 2011, and the Delaware Supreme Court affirmed that decision in September 2011 (and denied his motion for rehearing *en banc* in October 2011). The fact that the Delaware state courts denied the second Rule 61 motion as untimely means that it was not properly filed for § 2254(d)(1) purposes and, therefore, does not have any statutory tolling effect. Hence, when the limitations clock started to run again on November 23, 2010 after the Delaware Supreme Court affirmed the denial of Wood's first Rule 61 motion, the limitations clock ran the remaining 245 days without interruption until it expired on July 26, 2011. Accordingly, the instant petition must be dismissed as time-barred, unless equitable tolling applies.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). Consistent with these principles, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

(1) where the defendant (or the court) actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

7

*Jones,* 195 F.3d at 159; *Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Wood asserts numerous arguments for equitable tolling, none of which are persuasive. First, Wood contends that the instant petition should be considered timely because it constitutes an amendment under Federal Rule of Civil Procedure 15(c)(2) that relates back to the first federal habeas petition he timely filed in May 2011. (D.I. 41) However, it is well-settled that a new habeas petition cannot relate back to a habeas petition that was dismissed without prejudice for failure to exhaust state remedies. *Jones v. Morton,* 195 F.3d 153 (3d Cir. 1999). In this case, the Honorable Berle M. Schiller dismissed Wood's first petition without prejudice because the existence of Wood's then-pending second Rule 61 appeal meant that he had not exhausted state remedies when he filed the petition. In these circumstances, the court cannot treat the instant petition filed in November 2011 as an amendment "relating back" to Wood's earlier May 2011 petition.

Second, Wood asserts that Judge Schiller's July 6, 2011 order dismissing his first habeas petition without prejudice granted him permission to "return after" his state issues were resolved, without any need to comply with AEDPA's one-year limitations period. (D.I. 41 at 7) This assertion is belied by the actual wording of the dismissal order, which explicitly states that Wood is "responsible for determining the events that trigger and toll the limitations period." *Wood v. Phelps,* Civ. Act. No. 11-413-BMS, Mem. and Order at 2 n.1 (D. Del. July 6, 2011). Notably, nothing in the order even remotely suggests that Wood need not worry about the limitations period. *Wood v. Phelps,* Civ. Act. No. 11-413-BMS, Mem. and Order at 2 n.1 (D. Del. July 6, 2011). Moreover, when Wood filed his first federal habeas petition on May 12, 2011, he already knew that the Superior Court had denied his second Rule 61 motion as time-barred in April, 2011. Considering the Superior Court's April 2011 denial of Wood's Rule 61 motion as time-

8

barred, there existed the very likely probability that the Delaware Supreme Court would also conclude that Wood's second Rule 61 motion was time-barred, which, in turn, would mean that Wood's second Rule 61 motion could not toll AEDPA's limitations period because it was not "properly filed" for § 2254 purposes. Given the well-established principle that a prisoner's ignorance of the law and lack of legal expertise does not excuse his failure to make a prompt and timely filing,[6] the court concludes that Wood's erroneous assumption that Judge Schiller's dismissal of his first habeas petition without prejudice somehow excused his requirement to comply with AEDPA's one year limitations period does not constitute an extraordinary circumstance warranting equitable tolling.[7]

Third, the court rejects Wood's assertion that the limitations period should be equitably tolled because he has a "history of mental illness" and a "limited education," he "was without counsel during his initial collateral proceedings," and he "was incarcerated and was moved within the prison system [during the period of time in question,] which limited his access to people trained in law an access to a law library." (D.I. 41 at 6) To begin, a prisoner's limited access to a law library is a routine aspect of prison life, and is generally insufficient to trigger equitable tolling absent a causal relationship between the limited library access and the prisoner's late filing. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003); *Bunting v. Phelps*, 687 F. Supp. 2d 444, 448 (D. Del 2009). Here, Wood has not provided any evidence

_____

[6]*See Jones v. Morton,* 195 F.3d 153, 160 (3d Cir. 1999); *Simpson v. Snyder*, 2002 WL 1000094, at *3 (D. Del. May 14, 2002)(a petitioner's lack of legal knowledge does not constitute an extraordinary circumstance for equitable tolling purposes).

[7]The court also notes that Wood did not raise AEDPA's statute of limitations as a possible issue in his May 2011 petition, and he did not file a motion to stay and abey his federal habeas proceeding.

supporting his allegation of limited library access, which necessarily defeats his ability to demonstrate that the alleged limited access actually prevented him from filing a timely habeas petition.

Wood's contention that the limitations period should be equitably tolled because he has a limited education and he was mentally ill/incompetent during his trial also fails. Wood does not explain how his alleged mental illness and/or incompetence during his **trial**, or how his overall limited education, actually prevented him from filing a timely habeas petition. The record indicates that Wood was capable of filing court documents on time, because he timely filed his first Rule 61 motion in state court and he timely filed his unexhausted federal habeas petition before AEDPA's limitations period expired. *See Champney v. Sec'y Pennsylvania Dep't of Corr.*, 469 F. App'x 113, 118 (3d Cir. 2012)("[Petitioner's] participation in court proceedings over an extended period of time compel[s] the conclusion that the extraordinary remedy of equitable tolling is not warranted here.").

As for Wood's contention that he was not represented by counsel during the initial review of his first Rule 61 motion, the court construes this assertion as an attempt to use the recent holding in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) to excuse his untimely filing. However, this attempt fails. By its own terms, the *Martinez* decision provides a petitioner with an opportunity to overcome the **procedural default** of a claim asserting ineffective assistance of trial counsel, but does not in any way impact a petitioner's obligation to comply with AEDPA's limitations period.

Finally, the court rejects Wood's contention that the limitations period should be equitably tolled because he has newly discovered evidence of his actual innocence, namely, police reports from November 2005 and records from the Jewish Family Services ("JFS") for his

counseling sessions that occurred in 2004, 2005, and 2006. (D.I. 41 at 7); *see McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013)(a credible claim of actual innocence based on new reliable evidence that was not presented at trial may warrant equitable tolling). Wood contends the JFS records establish his innocence because they show he was a loving father trying to keep his family together; he was concerned about SP's anger and her acting out; he convinced SP and her mother to go to counseling, which he would not have done if he was abusing SP; and SP was a known liar. Wood contends that the two day period between the November 2005 police statements given by SP and CG establish his actual innocence because the two-day differential suggests that the girls "collaborated" on their stories in order to frame him. (D.I. 43 at 4-5)

To succeed on this argument, Wood must present a credible claim of actual innocence based on "new reliable evidence . . . that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Here, the court is not persuaded that the records are "newly discovered." First, considering that the police reports are dated November 2005, it would appear that they were substantially available to Wood during his February 2007 trial. Second, the JFS records were provided to Wood in September or October of 2009, approximately two years prior to Wood's filing of the instant petition. (D.I. 44) And finally, Wood actually admits that he has had the police reports and JFS records in his possession "for some time," but "just realized that he had them." (D.I. 43 at 4)

Even if the court were to view the records as "newly discovered," the records do not show "it is more likely than not that 'no reasonable juror' would have convicted" Wood if they had been presented at trial. Notably, the JFS records regarding Wood's counseling sessions only

provide a glimpse into Wood's perspective and mental health issues, not the victims'

perspectives or thought processes. As for the police reports, the fact that SP and CG provided

their police statements two days apart does not constitute concrete evidence that they were

working together to "frame him" as the perpetrator of the sexual abuse they alleged.

For all of these reasons, the court concludes that equitable tolling is not available on the

grounds set forth by Wood. Accordingly, the court will dismiss the petition as time-barred.

## III.  MERITS

Alternatively, even if the court were to treat the petition as timely filed, none of the

claims asserted therein warrant habeas relief.

### A. Claim Two (a), (b), (c) and Claim Three (b), (c):  Procedurally Barred Ineffective Assistance of Counsel Claims

Absent exceptional circumstances, a federal court cannot grant habeas relief on a

cognizable claim unless the petitioner has exhausted all means of available review under state

law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v.*

*Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2006); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

Here, in claim two (a), Wood contends that defense counsel was ineffective because he failed to investigate Wood's use of medications prior to trial and failed to argue that Wood was not competent to stand trial. Wood did not present this argument to the Superior Court in his first Rule 61 motion, but raised it for the first time during his post-conviction appeal of his first Rule 61 motion. As a result, the Delaware Supreme Court only reviewed claim two (a) for plain error pursuant to Delaware Supreme Court Rule 8; the Delaware Supreme Court rejected the claim because the record belied Wood's assertion of incompetency.

In claim two (b), Wood contends that defense counsel failed to argue that the trial court improperly admitted the out-of-court statements of the complaining witnesses under Del. Code Ann. tit. 11, § 3507. Similarly, claim two (c) asserts that counsel was ineffective for failing to file a motion for a hearing under Del. Code Ann. tit. 11, § 3508. Wood presented these two arguments to the Superior Court in his second Rule 61 motion, but the Superior Court denied the

entire second Rule 61 motion as time-barred under Rule 61(i)(1). The Superior Court also denied these two arguments as procedurally barred by Rule 61(i)(2), (3) and (4) because Wood did not present these arguments in his first Rule 61 motion. The Delaware Supreme Court affirmed that decision.

By applying the procedural bars of Delaware Supreme Court Rule 8 and Superior Court Criminal Rule 61(i), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed,* 489 U.S. 255, 263-4 (1984) that its decision to deny claim two in its entirety rested on state law grounds. This court has consistently held that Rule 8 and Rule 61 are independent and adequate state procedural rules precluding federal habeas review absent a showing of cause and prejudice. *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008) (Rule 8); *McCleaf v. Carroll,* 416 F. Supp. 2d 283, 296 (D. Del. 2006) (Rule 61); *Mayfield v. Carroll,* 2005 WL 2654283 (D. Del. Oct. 11, 2005). As such, the court cannot review the merits of claim two (a), (b), and (c) absent a showing of cause and prejudice.

As for claim three (b), in which Wood argues that defense counsel was ineffective for failing to develop mitigating evidence, and claim three (c), in which he alleges that defense counsel was ineffective for failing to file a supplemental brief, the record reveals that Wood raised these arguments in his first Rule 61 motion. However, Wood did not exhaust state remedies for these two arguments because he did not present them to the Delaware Supreme Court on post-conviction appeal. Delaware Superior Court Criminal Rules 61(i)(1), (2), (3), and (4) would bar Wood from presenting the arguments in claim three (b) and (c) in a new Rule 61 motion.[8] Thus, the court must treat claim three (b) and (c) as exhausted but procedurally

---

[8]Delaware Superior Court Criminal Rule 61 was recently amended in June 2014. The amendment changes the substance of Rule 61(i)(2) regarding repetitive motions, and also deletes

15

defaulted, meaning that the court cannot review their merits absent a showing of cause and prejudice.

Wood appears to contend that his procedural default of claim two (a)-(c) and claim three (b) and (c) should be excused pursuant to *Martinez v. Ryan,* because counsel was not appointed to represent him during his first Rule 61 proceeding in the Superior Court. (D.I. 52 at 3) This argument is unavailing. Although the *Martinez* Court held that a petitioner's failure to present a substantial ineffective assistance of trial counsel claim in the initial-review collateral proceeding may be excused if the petitioner was not represented by counsel, by its own terms, the *Martinez* holding cannot be used to excuse a petitioner's failure to present an ineffective assistance of trial counsel claim to a state's supreme court on **post-conviction appeal**. Here, Wood actually presented claim three (b) and (c) to the Superior Court in his first Rule 61 motion, and the Superior Court denied the arguments as meritless. Wood, however, failed to present these same issues to the Delaware Supreme Court on post-conviction appeal. As a result, *Martinez* does not help Wood establish cause for his procedural default of claim three (b) and (c).

In the absence of cause, the court need not address the issue of prejudice. Additionally, the miscarriage of justice exception does not excuse Wood's default of claim three (b) and (c), because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claim three (b) and (c) as procedurally barred.

As for Wood's default of claim two (a), (b), and (c), even if the court were to presume that the failure to appoint counsel for Wood in his first Rule 61 proceeding constituted cause

---

the Rule 61(i)(5) miscarriage of justice exception to the procedural bars contained in Rule 61(i)(1), (2), and (3). *See* Del. Super. Ct. Cr. R. 61(i). However, because the amendment to Rule 61(i) became effective on June 4, 2014, the court's analysis is governed by the version of Rule 61 that was in effect when Wood filed the instant petition.

under *Martinez*, the court is still precluded from reviewing the merits of claim two in its entirety because Wood has failed to demonstrate prejudice. For instance, during Wood's first post-conviction appeal, the Delaware Supreme Court reviewed Wood's argument in claim two (a) regarding defense counsel's failure to investigate whether Wood's use of psychotropic medications rendered him incompetent to stand trial under Delaware Supreme Court Rule 8's plain error standard, and found the argument to be without merit. Specifically, the Delaware Supreme Court noted that a "review of the trial transcript, in fact, reflects that Wood understood the proceedings against him and was able to actively participate in his own defense by consulting with his counsel and testifying on his own behalf." *Wood*, 2010 WL 4735003, at *2. In this proceeding, Wood has not rebutted the Delaware Supreme Court's factual finding with clear and convincing evidence to the contrary. As such, Wood cannot establish a reasonable probability that he would have been successful had he presented this claim to the Superior Court in his Rule 61 motion, which, in turn, prevents him from demonstrating prejudice sufficient to excuse his procedural default of claim two (a).

Similarly, Wood cannot demonstrate prejudice resulting from his default of claim two (b) and (c) (which allege defense counsel erred by failing to challenge evidentiary procedures he contends were improper under §§ 3507 and 3508). During Wood's second post-conviction appeal, the Delaware Supreme Court reviewed the instant arguments under Rule 61(i)(5),[9] and held that "Wood's counsel may not be faulted for failing to object to" the procedures for admission of out-of-court statements under §§ 3507 and 3513, "[b]ecause the record reflects that the proper procedures were used at trial." *Wood*, 2011 WL 4396996, at *2. The Delaware

---

[9]Delaware Superior Court Criminal Rule 61 was amended effective June 4, 2014. The amendment omits the Rule 61(i)(5) miscarriage of justice exception to the procedural bars contained in Rule 61(i)(1), (2), and (3). See Del. Super. Ct. Cr. R. 61(i).

Supreme Court also rejected Wood's argument that defense counsel was ineffective for failing to move for a § 3508 hearing because "Wood's counsel did, in fact, move for a § 3508 hearing, but the trial judge ruled against him." *Id.* Once again, the court accepts as correct the Delaware Supreme Court's factual findings, given Wood's failure to rebut those findings with any clear and convincing evidence. As such, Wood cannot demonstrate prejudice, because he cannot demonstrate a reasonable probability that he would have succeeded if, indeed, the arguments contained in claim two (b) and (c) had been presented to the Superior Court in his first Rule 61 motion. Accordingly, the court will deny all three sub-arguments of claim two as procedurally barred.

## B. Claim Three (a): Ineffective Assistance of Counsel

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[10] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated

---

[10]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Additionally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

In claim three (a), Wood contends that trial counsel was ineffective for failing to investigate and call ten defense witnesses and for failing to obtain school and counseling records of the victims. Wood presented this claim in his first post-conviction appeal, and the Delaware Supreme Court denied it as meritless. As such, Wood will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established Federal law.

The clearly established Federal law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that,

19

but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard when it denied the instant ineffective assistance of counsel claim on post-conviction appeal. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of three (a) as meritless involved a reasonable application of *Strickland.* When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Turning first to Wood's contention regarding counsel's failure to call the ten witnesses he identified, the Superior Court denied this contention as conclusory, and the Delaware Supreme

20

Court affirmed that decision after noting that Wood "fails to explain what these witnesses would have told the jury and how it could have impacted the outcome of his trial." *Wood*, 2010 WL 4735003, at *2. After reviewing the record, the court cannot conclude that the Delaware state courts unreasonably applied *Strickland* in rejecting this portion of claim three (a). Although Wood's petition and supplemental documents filed in this proceeding do not identify the witnesses or provide any description of the witnesses' potential testimony, the state court record reveals that the ten potential witnesses Wood named included his mother, sister, acquaintance/friend, therapist, and SP's therapist. (D.I. 16, Aug. 16, 2011 App. to Appellant's Reply Op. Br. in *Wood v. State*, No.219,2011 at 6-7) The record also reveals that Wood believed the witnesses would generally testify about SP's compulsive lying, and also that she was "sexually knowledgeable and promiscuous at the early age of 7 years old."[11] *Id.* However, Wood's prediction of the witnesses' testimony is speculative and self-serving. Moreover, given the relationship between Wood and his family members, their potential testimony regarding SP's alleged promiscuity as a child would have lacked credibility. And finally, Wood has not provided a description of the therapists' potential testimony, nor has he demonstrated that the therapists' testimony regarding SP's counseling sessions would have been admissible.

Trial counsel's strategic decisions regarding which witnesses to call are accorded great deference on federal habeas review. *See Strickland*, 466 U.S. at 690-91; *Hess v. Mazurkiewicz*, 135 F.3d 905, 908-09 (3d Cir. 1998). Given the aforementioned concerns surrounding the potential witnesses, the court cannot conclude that defense counsel's failure to call these witnesses was prejudicial to Wood's case.

---

[11]The court notes that the State's opening brief and appendix in Wood's first Rule 61 proceeding (No. 579,2009) are not included in the record.

In turn, Wood's contention that counsel failed to subpoena the victims' school and counseling records is unavailing because it is factually incorrect. As the Delaware Supreme Court held on post-conviction appeal, Wood cannot demonstrate prejudice under *Strickland* because trial counsel actually did subpoena the school and counseling records of the victims, but the trial court granted the State's motion to quash those subpoenas. *See State v. Wood*, 2007 WL 441953 (Del. Super. Ct. Feb. 1, 2007).

Wood attempts to bypass this conclusion in one of his responses to the State's answer by asserting that, although he is unsure if defense counsel obtained the victims' therapy and counseling records, counsel was ineffective because the "defense claim of being innocent may have been established had counsel confronted the victims about what they meant by 'Bruce loves his children and family. I'm going to make sure he doesn't have that anymore.'" (D.I. 41 at 5) In essence, Wood is alleging that counsel could have established that the victims "framed him" by pursuing this line of questioning. This speculative argument, however, fails to establish a reasonable probability that the outcome of Wood's criminal proceeding would have been different but for counsel's alleged failure.

In sum, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim three (a). Accordingly, the court will deny claim three (a) as meritless.

### C. Claim One: Not Cognizable And/Or Procedurally Barred

In claim one, Wood contends that the trial court erred by failing to grant his pre-trial motion to sever the two sets of charges relating to the two different complaining witnesses. Wood presented this same argument to the Delaware Supreme Court on direct appeal, contending that the improper joinder violated Superior Court Criminal Rule 8(a), and that the

trial court should have granted his motion to sever the charges under Superior Court Criminal Rule 14. *See Wood*, 956 A.2d at 1230-33. The Delaware Supreme Court rejected Wood's argument, and held that the trial court did not err in denying his motion to sever.

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). It is also well-established that "[s]tate courts are the ultimate expositors of state law,"[12] and claims based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Here, as in his direct appeal, Wood does not assert that the alleged improper joinder amounted to a constitutional violation. Rather, he argues that the trial court's actions constituted reversible error. As such, the court concludes that claim one is not cognizable on habeas review.

Moreover, even if the court were to treat claim one as asserting a cognizable due process argument, the court would deny the claim as procedurally barred. Wood did not raise claim one as a federal constitutional claim at the state court level, and he does not assert any cause and prejudice for his default. In turn, Wood's procedural default also cannot be excused under the miscarriage of justice exception, because he has not presented any new reliable evidence of his actual innocence. For these reasons, the court alternatively denies claim one as procedurally barred.

### D. Claim Four: Procedurally Barred

In claim four, Wood contends that his due process rights were violated when the prosecutor made improper opening and closing statements and arguments. Wood presented this

---

[12]*Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

23

same argument in his first Rule 61 proceeding, but the Superior Court denied it as procedurally defaulted under Rule 61(i)(3) because Wood failed to present the prosecutorial misconduct claim on direct appeal. The Delaware Supreme Court affirmed that decision. In these circumstances, the court cannot review the merits of claim four unless Wood establishes cause for and prejudice resulting from his default of claim four, or that the court should review its merits in order to prevent a miscarriage of justice.

Wood attempts to establish cause for his procedural default of claim four by blaming appellate counsel for failing to present the claim on direct appeal. An attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a petitioner's default of that claim only if counsel's failure amounts to constitutionally ineffective assistance. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). In his first post-conviction appeal, the Delaware Supreme Court rejected Wood's attempt to blame appellate counsel for his default of the prosecutorial misconduct claim because Wood "fail[ed] to allege with any specificity what statements were allegedly improper or how those statements allegedly affected the outcome of his trial," which, in turn, meant that Wood did not establish sufficient prejudice under *Strickland*. *Wood*, 2010 WL 4735003, at *1.

Wood attempts to establish cause in this proceeding by blaming appellate counsel for not raising the issue of prosecutorial misconduct on direct appeal. However, the instant attempt fails because, as in his first state post-conviction appeal, Wood does not identify which prosecutorial statements and/or arguments defense counsel should have objected to.

Wood's failure to establish cause obviates the court's need to address the issue of prejudice. Moreover, given Wood's failure to provide new reliable evidence of his actual

24

innocence, the miscarriage of justice exception to the procedural default doctrine is inapplicable. Accordingly, the court will deny claim four as procedurally barred from federal habeas review.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Wood's petition filed pursuant to 28 U.S.C. § 2254 should be denied as time-barred or, alternatively, because the claims contained therein are meritless or procedurally barred. The court is persuaded that reasonable jurists would not find these conclusions to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the court will deny Wood's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.